he should then look; but if he has looked in both directions before leaving the sidewalk, and seen no car approaching which would intercept his passage, and the street is free from vehicles and all obstructions to a full view, and no bell is sounded by approaching car nor other warning of danger given, then it is a question for the jury whether he should again look up or down before crossing the track. Such a state of facts is presented by the record before us, and we cannot say that the evidence was insufficient to sustain a finding that there was no contributory negligence on the part of the plaintiff.

Judgment affirmed, with costs.

McADAM, J., concurs.

BISCHOFF, J. (concurring). The plaintiff's attempt to cross the street was noted by a passenger when the car was 75 feet distant from the point where her course should cross the track: Certainly the attempt was as readily to be observed by the gripman, and it was shown that he could have stopped the car within 20 feet. It was competent to the jury to find that the exercise of reasonable care by the gripman would have led to his reducing the speed of the car when the plaintiff's intention to cross became apparent, and, if so, she was justified in relying upon that act being performed. When she looked up and down the street, before crossing, the car was not sufficiently close to be necessarily taken as a threatened danger, and its proximity when she came upon the track could be viewed by the jury as resulting only from the gripman's failure to employ that degree of care which she was entitled to expect from the defendant or its servants, and in relying upon which expectation she was not negligent as a matter of law. I therefore concur for affirmance.

---

FREEDON v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. December 18, 1897.)

CARRIERS—INTOXICATED PERSONS—EXCLUSION FROM TRAIN.
    Plaintiff testified that while approaching a train he was so drunk that he walked irregularly, and that he had to have assistance in reaching a passenger car. Shortly afterwards he was arrested for being drunk in a public place, and pleaded guilty. Witnesses testified that he was so drunk and helpless that his head fell over on one side, and that he was almost unconscious. Held that, as a matter of law, he was so intoxicated that the railroad company had the right to prevent him from entering the car.

Appeal from trial term.

Action by James Freedon against the New York Central & Hudson River Railroad Company. From a judgment for plaintiff for $879.79, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Mullin, Purcell & Walker, for appellant.

S. B. Mead, for respondent.

FOLLETT, J.  This action was begun February 13, 1895, to recover damages for a personal injury caused, it is alleged, by the wrongful assault committed by defendant's conductor on the plaintiff while he was attempting to enter a passenger coach at the village of Fulton, N. Y., on the 3d of December, 1894.  The plaintiff testified that December 3, 1894, about 3 o'clock p. m., he attempted to enter defendant's north-bound train for Oswego.  He had not purchased a ticket.  He testified that as he stepped his left foot on the first step, and his right foot on the second step, of the passenger coach, he was met by the conductor, and asked if he had a ticket; that he replied, "No," but that he had money with which to pay his fare; and that thereupon the conductor ordered him off from the train, and put his hand against his breast and shoved him off, by means of which he fell, and sustained serious injuries.  There are two railroads between Fulton and Oswego,—the Ontario & Western, and the defendant's.  The plaintiff testified that he did not know, and did not care, by which road he was trying to go.  The plaintiff testified that he had been drinking whisky during the day, and says that (when he left the Dexter House for the train):

"I was pretty drunk.  I was drunk.  I don't know how long I had been pretty drunk; but I came out of the barroom of the Dexter House in, probably, twenty minutes,—ten minutes.  Nathaniel Mead was one of the men whom the other witnesses have described had hold of me as if to assist me to the car, and the other one I didn't know.  I was so drunk I walked irregularly as I approached the train.  *  *  *  I could have got to the steps if somebody had not taken hold and. helped me.  I think I could.  I didn't have to wait for him no time to take hold and help.  I waited long enough for a man to walk across the sidewalk.  Mead and the other man took hold of me,—one under each arm.  They had to take me about thirty feet to get me to the steps of the car.  I didn't have any ticket.  When I got to the car I was still pretty drunk.  Don't know as I was drunker than when I left the barroom.  In about the same condition."

The plaintiff's counsel admitted that his client was drunk when he undertook to take this train.  Shortly after this occurrence the plaintiff was arrested for being intoxicated in a public place, pleaded guilty, and was sentenced.  Other witnesses testified that the plaintiff was so drunk and helpless when he was attempting to get on the car that his head fell over on one side, and that he was almost unconscious.  The plaintiff himself admits that immediately after the accident he was unconscious.  From the plaintiff's own testimony, and that given by witnesses called by him, it is apparent that he was in such an intoxicated and helpless condition that the defendant had the right to refuse to permit him to enter its passenger coach.  Putnam v. Railroad Co., 55 N. Y. 108; Vinton v. Railroad Co., 11 Allen, 304; Thomas, Neg. 212 et seq., and cases cited; 2 Wood, Ry. Law, 1035.  It should have been held, as a matter of law, that this plaintiff was so intoxicated that the defendant had the right to prevent him from entering one of its passenger coaches.  Much evidence was given which tended to show that the plaintiff fell and received his injury before he reached the defendant's car.  However, whether his injury was so received was a fair question for the jury. ' The plaintiff failed to show by a fair preponderance of evidence that

the defendant's conductor used more force than was necessary to get the plaintiff off the steps of the car; and the great preponderance of evidence is to the effect that he received his fall, if he fell in get- ting from the steps, by reason of his condition, and not by reason of the force used by the trainmen. If the jury found, as a question of fact, that the defendant was not justified in excluding the plaintiff from its train, its finding is against the weight of evidence; and, if the jury found that the defendant's trainmen used more force than was necessary to remove the plaintiff from the steps of the passenger coach, the finding is contrary to the weight of evidence.

The judgment and order should be reversed, and a new trial grantd, with costs to the appellant to abide the event. All concur.